# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **BRYAN E. MURPHY, individually and on behalf of all other persons similarly situated,** ) ) ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | Honorable |
| v. ) | |
| ) | **JURY DEMAND** |
| **MARRIOTT INTERNATIONAL, INC.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## CLASS ACTION COMPLAINT

**NOW COMES** Plaintiff Bryan Murphy ("Murphy" or "Plaintiff"), individually and on behalf of other persons similarly situated, and complains against Defendant Marriott International, Inc. ("Marriott" or "Defendant"), as follows:

## NATURE OF THE ACTION

1. Marriott International, Inc. is a globally recognized hotel conglomerate and is the parent company of Starwood Hotels & Resorts Worldwide, LLC ("Starwood"). Starwood, which has now merged with Marriott, collected a panoply of its customers' private personal information that included, but is not limited to, customers' names, dates of birth, gender, phone numbers, mailing addresses and passport information, as well as credit and debit card numbers and other charge card data ("Private Data"). The Private Data was collected whenever a customer registered on Starwood's website, checked-in to one of its hotels, used their loyalty program (the "Loyalty Program") and/or transacted at one of its dining or retail operations within its hotels. Thereafter, Starwood electronically stored the Private Data on servers with the intent that it would remain

secure. However, from 2014 through November 2018, Starwood failed to protect its customers' Private Data and allowed it to be plundered by hackers who exploited Starwood's network vulnerabilities (the "Breach"). Making matters worse, Starwood failed to provide timely, adequate and accurate notice to Plaintiff, and other Class Members, that their Private Data had been stolen after Starwood became aware of the Breach. Due to Starwood's inability to protect its customers' Private Data, and its inaction following the Breach, Plaintiff and other Class Members have been damaged by the unauthorized access to and/or use of their Personal Data prompting the filing of this suit.

2. On November 30, 2018, Marriott acknowledged the Breach and admitted that Starwood allowed unauthorized access to its guest reservation database, which contained hundreds of millions of customers' Private Data collected from reservations at Starwood locations on or before September 10, 2018. While Marriott has not completed its investigation into the Breach, it currently believes that approximately 327 million guests who made reservations at a Starwood location had various forms of their Personal Data duplicated and/or stolen in the Breach.

3. The Breach, and the harm that ensued, was the direct result of Marriott's and Starwood's failure to adopt data protection technology that other companies who store similar information have implemented. In doing so, Marriott intentionally, negligently, recklessly, and/or willfully disregarded Plaintiff's and Class Members' rights by failing to place adequate safeguards on its customers' Private Data, failing to recognize the Breach and prevent the extent thereof, and failing to disclose the material facts regarding the inadequacies of its technological security practices to its customers.

4. On information and belief, Plaintiff's and Class Members' Private Data was improperly handled and stored, was unencrypted and was not kept in accordance with applicable, required and appropriate cyber-security protocols. Consequently, Plaintiff's and Class Members' Private Data was compromised and stolen. Meanwhile, this information remains stored on Marriott's servers and Plaintiff and Class Members have an interest in ensuring that their Private Data is secure, and are entitled to seek injunctive and other equitable relief, including independent oversight of Marriott's security systems.

**PARTIES**

5. Plaintiff Bryan Murphy is a citizen and resident of the State of Illinois and a consistent user of Defendant's Loyalty Program, having been a Member for 9 years and obtaining Platinum Premier Elite membership status. Mr. Murphy provided his personal and confidential information to the Defendant on the basis that Defendant would keep his information secure, employ adequate and reasonable safeguards to defend against potential hackers, and promptly notify him in the event of a breach. On December 7th 2018, Defendant notified Mr. Murphy via email that his Private Data was compromised in the Breach. Plaintiff has suffered damages as a result. As a result, Mr. Murphy is taking measures to ensure that his identity is not stolen and that his accounts are not compromised.

6. Marriott International, Inc. is a Delaware corporation with its principal place of business in Bethesda, Maryland.

7. Starwood is a wholly owned subsidiary of Defendant Marriott.

**JURISDICTION AND VENUE**

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1332(d)(2) in that it is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the matter in controversy, as aggregated pursuant to 28 U.S.C. § 1332(d)(2)(6), exceeds the sum of $5,000,000 exclusive of interest and costs, and a substantial number of members of the class and Plaintiff, are citizens of a state different from Defendant.

9. Personal jurisdiction over Defendant is proper under 735 ILCS 5/2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(b)(4), and (c).

10. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. § 1367 because they are so related to Plaintiff's claim within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is properly placed in the Northern District of Illinois, Eastern Division, through 28 U.S.C. § 1391(b), because a substantial part of the facts, events, or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**FACTUAL BACKGROUND**

12. The Marriott hotel chain owns and operates more than 6,700 properties around the world.

13. In November 2015, Marriott purchased Starwood, which includes several other hotel brands including, but not limited to Sheraton Hotels & Resorts and Westin Hotels & Resorts,

for $13.6 billion. Marriott's acquisition of Starwood created the industry's largest hotel chain in existence.

14. From the time of the Breach to date, Marriott's website has maintained the following privacy policy:

This Privacy Statement describes the privacy practices of the Marriott Group for data that we

collect:

- Through websites operated by us from which you are accessing this Privacy Statement, including Marriott.com and other websites owned or controlled by the Marriott Group (collectively, the "**Websites**")
- Through the software applications made available by us for use on or through computers and mobile devices (the "**Apps**")
- Through our social media pages that we control from which you are accessing this
Privacy Statement (collectively, our "**Social Media Pages**")
- Through HTML-formatted email messages that we send you that link to this Privacy
Statement and through your communications with us
- When you visit or stay as a guest at one of our properties, or through other offline Interactions Collectively, we refer to the Websites, the Apps and our Social Media Pages, as the "**Online Services**" and, together with offline channels, the "**Services.**" By using the Services, you agree to the terms and conditions of this Privacy Statement.

"**Personal Data**" are data that identify you as an individual or relate to an identifiable individual.

At touchpoints throughout your guest journey, we collect Personal Data in accordance with law, such as:

- Name
- Gender
- Postal address
- Telephone number
- Email address
- Credit and debit card number or other payment data
- Financial information in limited circumstances
- Language preference
- Date and place of birth
- Nationality, passport, visa or other government-issued identification data
- Important dates, such as birthdays, anniversaries and special occasions
- Membership or loyalty program data (including co-branded payment cards, travel partner program affiliations)

5

     • Employer details
     • Travel itinerary, tour group or activity data
     • Prior guest stays or interactions, goods and services purchased, special service and amenity requests
     • Geolocation information
     • Social media account ID, profile photo and other data publicly available, or data made available by linking your social media and loyalty accounts

  In more limited circumstances, we also may collect:

    • Data about family members and companions, such as names and ages of children
    • Biometric data, such as digital images
• Images and video and audio data via: (a) security cameras located in public areas, such as hallways and lobbies, in our properties; and (b) body-worn cameras carried by our loss prevention officers and other security personnel
• Guest preferences and personalized data ("Personal Preferences"), such as your interests, activities, hobbies, food and beverage choices, services and amenities of which you advise us or which we learn about during your visit

  If you submit any Personal Data about other people to us or our Service Providers (e.g., if you make a reservation for another individual), you represent that you have the authority to do so and you permit us to use the data in accordance with this Privacy Statement.

  15. Marriott not only collects and stores this Private Data but it utilizes this information to maximize profits through predictive marketing and other marketing techniques.

  16. Given the Private Data hundreds of millions of consumers must disclose when traveling to places such as Marriott, such consumers place immense value on data privacy and security. Accordingly, had Plaintiff and/or Class Members known that Marriott chose to remain vulnerable to potential hackers, neither would have stayed at a Starwood hotel or used their credit and/or debit cards at those locations.

  17. However, Marriott failed to disclose its negligent and insufficient data security practices to Plaintiff and Class member which eventually to the duplication and/or theft of their Private Data.

6

18. On or around September 8, 2018, Marriott stated that it received an alert from an internal system that there was an attempt to access the Starwood guest reservation database.

19. The data stolen during this breach was taken from the Starwood reservation system. Starwood is a hotel company acquired by Marriott in 2016. Starwood properties include W Hotels, St. Regis, Sheraton, Westin, Element, Aloft, the Luxury Collection, Le Meridien, and Four Points. Defendant states the breach affected 500 million guests from an unspecified date in 2014 through September 10th of this year.

20. After an investigation into the alert, Marriott discovered that unauthorized users had accessed the Starwood network *four years* prior to the time Marriott became aware of the Breach.

21. An analysis of the Breach showed that the unauthorized users had copied and encrypted Private Data and had attempted to remove it.

22. The database contained approximately 327 million guests' information including some combination of arrival and departure information, communication preferences, date of birth, email address, gender, mailing address, name, phone number, passport number, reservation date and Starwood Preferred Guest account information.

23. For other guests, the information also included payment card number and payment card expiration dates.

24. On information and belief, Marriott utilizes its customers' Private Data for its own gain through predictive marketing and other profit-making ventures including the sale of certain contents contained in the Private Data.

25. Marriott issued a statement regarding the Data Breach, in which Chief Executive Arne Sorenson stated: "We fell short of what our guests deserve and what we expect of ourselves.

We are doing everything we can to support our guests, and using lessons learned to be better moving forward."

26. Marriott's failure to comply with reasonable security standards provided Marriott with short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of Marriott's own customers – including plaintiff and Class members here – who have been subject to the Data Breach or otherwise have had their personal and financial information placed at serious and ongoing risk.

27. Marriott allowed widespread and systematic theft of its customers' PII and financial information. Defendant's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' personal and financial information.

28. On November 19, 2018 Marriott disclosed the Breach to the public and on or about December 7, 2018 Marriott disclosed the Breach to Plaintiff and Class Members via email describing a "Notice of Data Security Incident".

29. Marriott's "Notice of Data Security Incident" email did not include a toll-free numbers, addresses, and websites of consumer reporting agencies and the Federal Trade Commission. Furthermore, the aforementioned email did not explain how to obtain fraud alerts or security freezes as required under the Illinois' Personal Information Privacy Act.

30. Plaintiff frequently used his debit/credit card at Marriott or Starwood properties when making bookings.

31. Marriott violated the Illinois Consumer Fraud and Deceptive Business Practices Act failing to employ reasonable security measures, controls and procedures to protect the Private

Data of Plaintiff and Class Members and failing to timely and properly inform Plaintiff and Class Members of their Private Data breach and exposure.

*Marriott Failed to Comply with Relevant Industry Standards for Data Security*

32. Marriott announced on November 30th that a four-years-long data breach had compromised the PII of approximately 500 million Marriott hotel guests worldwide.

33. Marriott claims it discovered the data breach on September 8th when Marriott "received an alert from an internal security tool regarding an attempt to access the Starwood guest reservation database in the United States."[1] Marriott's November 30, 2018 press release further states:

> Marriott quickly engaged leading security experts to help determine what occurred. Marriott learned during the investigation that there had been unauthorized access to the Starwood network since 2014. The company recently discovered that an unauthorized party had copied and encrypted information, and took steps toward removing it. On November 19, 2018, Marriott was able to decrypt the information and determined that the contents were from the Starwood guest reservation database.
>
> The company has not finished identifying duplicate information in the database, but believes it contains information on up to approximately 500 million guests who made a reservation at a Starwood property.
>
> . . .
>
> Marriott reported this incident to law enforcement and continues to support their investigation. The company has already begun notifying regulatory authorities.
>
> "We deeply regret this incident happened," said Arne Sorenson, Marriott's President and Chief Executive Officer. "We

---

[1] *Marriott Announces Starwood Guest Reservation Database Security Incident,* MARRIOTT (Nov. 30, 2018), http://news.marriott.com/2018/11/marriott-announces-starwood-guest-reservation-database-security-incident/ (last visited Dec. 4, 2018).

> fell short of what our guests deserve and what we expect of ourselves. We are doing everything we can to support our guests, and using lessons learned to be better moving forward."
>
> "Today, Marriott is reaffirming our commitment to our guests around the world. We are working hard to ensure our guests have answers to questions about their personal information, with a dedicated website and call center. We will also continue to support the efforts of law enforcement and to work with leading security experts to improve. Finally, we are devoting the resources necessary to phase out Starwood systems and accelerate the ongoing security enhancements to our network," Mr. Sorenson continued.[2]

34. Plaintiff and Class members often used credit cards to make Marriott reservations. A credit card is a type of payment card. Members of the payment card industry ("PCI") established a Security Standards Counsel ("PCI SSC") in 2006 to develop PCI Data Security Standards ("PCI DSS") for increased security of payment processing systems.

35. The PCI DSS provides: ""PCI DSS applies to all entities involved in payment card processing−including merchants."[3] Marriott is a merchant that accepts payment cards.

36. The PCI DSS requires a merchant to, among other things, protect cardholder data, maintain a vulnerability management program, implement strong access control measures, and regularly monitor and test networks.

37. Furthermore, financial institutions and credit card processing companies have issued rules and standards governing the basic measures that merchants such as Marriott must take to ensure that valuable transactional data is secure and protected. The debit and credit card companies issue regulations ("Card Operating Regulations") that bind Marriott as a condition of its

---

[2] *Id*.

[3] *Requirements and Security Assessment Procedures, Version 3.2.1,* Payment Card Industry (PCI) Data Security Standard, at 5 (May 2018), https://www.pcisecuritystandards.org/documents/PCI_DSS_v3-2-1.pdf.

contract with the bank. The Card Operating Regulations prohibit Marriott and other merchants from disclosing any card holder account numbers, personal information, or transaction information to third parties (other than the merchant's agent, the acquiring bank, or the acquiring bank's agents). The Card Operating Regulations further require Marriott to maintain the security and confidentiality of debit and credit cardholder information and protect it from unauthorized disclosure.

38. On information and belief, Marriott failed to comply with the PCI DSS as well as Card Operating Regulations, resulting in the Data Breach.

*Damages Sustained By Plaintiff and the Class*

39. A portion of the services purchased from Marriott by Plaintiff and the other Class members necessarily included compliance with industry-related measures with respect to the collection and safeguarding of PII, including their credit and debit card information. Because Plaintiff and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiff and the Class incurred actual monetary damages in that they overpaid for the products and services purchased from Marriott.

40. Plaintiff and the Class have suffered additional injury in fact and actual damages including monetary losses arising from unauthorized bank account withdrawals, fraudulent card payments, and/or related bank fees charged to their accounts.

41. After the Data Breach, Marriott said it was sending email notifications to those who may have been affected and that residents of the United States would be eligible for a free year of enrollment in WebWatcher, an identity fraud alert system. However, as explained above,

fraudulent use of cards might not be apparent for years. Therefore, consumers must spend considerable time taking these precautions for years to come.

42. Plaintiff and Class members have a difficult road ahead as a result of the Data Breach. As security blogger Brian Krebs noted while discussing the Michael Stores data breach: "credit monitoring services will do nothing to protect consumers from fraud on existing financial accounts – such as credit and debit cards – and they're not great at stopping new account fraud committed in your name."[4]

43. As a result of these activities, Plaintiff and the Class suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Marriott's wrongful conduct.

44. Moreover, for customers of credit unions, this breach and the resulting fraud will raise the cost of credit. As one executive at Mission Federal Credit Union noted, because credit unions are non-profits, "when [credit unions] take $100,000 in credit card losses [resulting from fraudulent charges], that's $100,000 that we could have used to give our customers higher interest rates or lower loan rates."[5] Even if a customer is not responsible for fraudulent charges, a data breach resulting in such fraudulent charges will nonetheless raise the cost of acquiring credit by all customers of credit unions, further damaging them.

---

[4] Brian Krebs, *3 Million Customer Credit, Debit Cards Stolen in Michaels, Aaron Brothers Breaches*, KREBS ON SECURITY (Apr. 14, 2014), https://krebsonsecurity.com/2014/04/3-million-customer-credit-debit-cards-stolen-in-michaels-aaron-brothers-breaches/.

[5] Elizabeth Weise, *Massive data breaches: Where they lead is surprising*, U.S.A. TODAY (Oct. 3, 2014 10:30 AM), https://www.usatoday.com/story/tech/2014/10/02/home-depot-data-breach-credit-card-fast-food/16435337/.

45. Plaintiff and the Class suffered additional damages based on the opportunity cost and value of time that Plaintiff and the Class have been forced to expend to monitor their financial and bank accounts as a result of the Data Breach. Such damages also include the cost of obtaining replacement and debit cards

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings Counts I through IV as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all other current and former customers of Defendant Marriott who suffered from the illegal practices alleged herein.

47. With respect to Plaintiff's Breach of Implied Contract claim (Count I), Plaintiff seeks to represent a class that is comprised of and defined as:

> All persons residing in the United States who provided personally identifiable information ("PII") (including payment card information) to Marriott and whose PII was accessed, compromised, or stolen from Marriott in the Data Breach.

48. With respect to Plaintiff's Illinois Personal Information Protection Act claim (Count II) Illinois Consumer Fraud & Deceptive Business Practice Act claim, (Count III) and Unjust Enrichment claim (Count IV), Plaintiff seeks to represent a class that is comprised of and defined as:

> …All persons residing in Illinois who provided personally identifiable information ("PII") (including payment card information) to Marriott and whose PII was accessed, compromised, or stolen from Marriott in the Data Breach.

49. This action is being brought as a class action pursuant to Fed. R. Civ. P. 23, because the Classes are so numerous that joinder of all class members is impracticable.

50. Plaintiff and the members of the classes have been equally affected by Marriott's practice of unlawful and unreasonable measures to protect their customers Private Data.

51. Plaintiff and the members of the Classes have been equally affected by Marriott's wrongful practices as alleged herein.

52. The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations that may exist between members of the classes, if any.

53. Plaintiff and the members of the Classes, as well as Defendant, have a commonality of interest in the subject matter and the remedy sought.

54. Plaintiff is able to fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff's Counsel are competent and experienced in litigating large complex class actions.

55. If individual actions were required to be brought by each member of the classes injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the classes, to the court, and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Classes are entitled.

56. Plaintiff has retained counsel experienced in complex litigation and in class action litigation.

57. Plaintiff and his counsel will fairly and adequately protect the interest of the Classes.

### COUNT I
**(Breach of Implied Contract)**

58. Plaintiff re-incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

59. "When the customer uses a credit card for a commercial transaction, he intends to provide the data to the merchant, and not to an unauthorized third party." *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1070 (C.D. Ill. 2016), citing *In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011).

60. When a customer uses a credit card for a commercial transaction "[t]here was an offer, acceptance, consideration, and a meeting of the minds." *Id.*, citing *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 153-54 (1st Cir. 2011).

61. "There is an implicit agreement to safeguard the customer's information to effectuate the contract." *Id*.

62. Throughout the 9 years Plaintiff was a member of Marriott's loyalty program he frequently used his debit/credit card at Marriott or Starwood properties or through Marriott's website.

## COUNT II
### (Violation of the Illinois Personal Information Protection Act, 815 ILCS 530/1 *et seq.*)

63. Plaintiff re-incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

64. Section 10(a) of the Illinois Personal Information Protection Act ("PIPA") provides in pertinent part:

> Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most expedient time possible and without unreasonable delay, consistent with

any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system.

815 ILCS 530/10(a).

65. Notice is governed by Section 10(c) of PIPA which provides that consumers may be notified via written notice, electronic notice in accordance with Section 7001 of Title 15 of the United States Code, or substitute notice if the data collector demonstrates that the cost of providing notice would exceed $250,000 or there are more than 500,000 affected class members. 815 ILCS 530/10(c). Should substitute notice be available, as here, it must be provided via (i) email notice if the data collector has an email address for the subject persons; (ii) conspicuous posting of the notice on the data collector's web site page if the data collector maintains one; and (iii) notification to major statewide media. *Id*.

66. Subsection (b) of that same section provides:

(b) Any data collector that maintains or stores, but does not own or license, computerized data that includes personal information that the data collector does not own or license shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person. In addition to providing such notification to the owner or licensee, the data collector shall cooperate with the owner or licensee in matters relating to the breach. That cooperation shall include, but need not be limited to:

(i) informing the owner or licensee of the breach, including giving notice of the date or approximate date of the breach and the nature of the breach, and

(ii) informing the owner or licensee of any steps the data collector has taken or plans to take relating to the breach. The data collector's cooperation shall not, however, be deemed to require either the disclosure of confidential business information or trade secrets or the notification of an Illinois resident who may have been affected by the breach.

815 ILCS 530/10(b).

16

67. On November 19, 2018 Marriott disclosed the Breach to the public and on or about December 7, 2018 Marriott disclosed the Breach to Plaintiff and Class Members via email describing a "Notice of Data Security Incident".

68. Marriott's "Notice of Data Security Incident" email did not include a toll-free numbers, addresses, and websites of consumer reporting agencies and the Federal Trade Commission. Furthermore, the aforementioned email did not explain how to obtain fraud alerts or security freezes as required under the Illinois' Personal Information Privacy Act.

## COUNT III
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* Unfair Business Practice)

69. Plaintiff re-incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

70. Plaintiff asserts this cause of action on behalf of himself and all Class Members and at all times relevant hereto, there was in full force and effect a statute in Illinois commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "Act").

71. Section 2 of the Act provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. [15 U.S. C. § 45]. 815 ILCS 505/2.

72. Plaintiff and other Class Members are "consumers" within the meaning of the Act.

73. Marriott violated the Illinois Consumer Fraud and Deceptive Business Practices Act failing to employ reasonable security measures, controls and procedures to protect the Private Data of Plaintiff and Class Members and failing to timely and properly inform Plaintiff and Class Members of their Private Data breach and exposure.

## COUNT IV
**(Unjust Enrichment)**

74. Plaintiff re-incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

75. Plaintiff and other Class Members have conferred substantial benefits on Defendant by enrolling in their loyalty program and providing their Private Data Defendant utilized this information with predictive marketing and other tailored advertising techniques and Defendant has knowingly and willingly accepted and enjoyed these benefits.

76. Defendant received these benefits as a result of it loyalty program which inadequately secured the Private Data of the Plaintiff and Class Members.

77. Defendant either knew or should have known that Plaintiff and Class Members provided their Private Data with the expectation that their Private Data would be secured and free from exposure and would not have provided such information which Defendant monetarily benefited from.

78. Under the common law of unjust enrichment in every state in the United States where financial benefits were obtained by utilizing information provided by Plaintiffs and other Class Members, it would be inequitable for Defendant to retain any monetary benefits under these circumstances and such retention constitutes unjust enrichment.

79. Under the law of Illinois, both law and equity demand disgorgement of Defendant's ill-gotten gains derived as a result of Defendant's unlawful and negligent security practices and failure to properly notify Plaintiff and other Class Members of the Data Breach.

80. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the other Class Members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant's use of Private Data.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all the claims asserted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Marriott, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

B. Ordering Marriott to pay actual damages to Plaintiff and the other members of the Class;

C. Ordering Marriott to pay for not less than three years of credit card monitoring services for Plaintiff and the other members of the Class;

D. Ordering Marriott to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

E. Ordering Marriott to pay statutory damages, as provided by the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq* and other applicable State Consumer Fraud Acts, to Plaintiff and the other members of the Class;

F. Ordering Marriott to disseminate individualized notice of the Data Breach to all Class members;

G. Ordering Marriott to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

H. Ordering Marriott to pay both pre- and post-judgment interest on any amounts awarded; and

I. Ordering such other and further relief as may be just and proper.

Dated: January 29, 2019

        Respectfully Submitted,

        /s/ Kasif Khowaja .

        *One of the Attorneys for Plaintiff*

        Brian Murray (*pro hac vice* to be filed)
        Lee Albert (*pro hac vice* to be filed)
        **GLANCY PRONGAY & MURRAY**
        230 Park Avenue, Suite 530
        New York, NY 10169
        (212) 682-5340 - Telephone
        (212) 884-0988 - Facsimile
        Email: bmurray@glancylaw.com
              lalbert@glancy.com

        Kasif Khowaja
        Frank Castiglione
        **THE KHOWAJA LAW FIRM, LLC**
        8 South Michigan Avenue, Suite 2600
        Chicago, IL 60603
        (312) 356-3200 - Telephone
        (312) 386-5800 - Facsimile
        Email: kasif@khowajalaw.com
              fcastiglione@khowajalaw.com